UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN JUSTER,

            Plaintiff,

    v.

WORKDAY, INC., et al.,

            Defendants.

Case No. 21-cv-07555-EMC

**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Docket Nos. 26, 29

Plaintiff Benjamin Juster has filed a class action against Defendants Workday, Inc. and HireRight, LLC ("HR").  In or about June 2021, Workday gave an employment offer to Mr. Juster conditioned on a background check.  Workday had HR do the background check.  According to Mr. Juster, Defendants violated the Fair Credit Reporting Act ("FCRA") as well as California's Investigative Consumer Reporting Agencies Act ("ICRAA") because they failed to give him proper disclosures about the background check.  Mr. Juster also asserts violations of other state law – *e.g.*, a violation of California Labor Code § 432.3 which prohibits an employer from seeking earnings history information about an applicant.

Currently pending before the Court are two 12(b)(6) motions: one filed by Workday and the other by HR.  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DEFERS** in part the motions to dismiss.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Workday hired Mr. Juster in June 2021.  The offer letter stated that the employment was at will,

United States District Court
Northern District of California

> meaning either you or Workday may terminate your employment at any time, for any reason or no reason, with or without notice. There is no promise by Workday that your employment will continue for a set period of time or that your employment will be terminated only under particular circumstances.

RJN, Ex. A (offer letter). The offer letter also stated that "[t]he offer of employment set forth in this Letter is contingent upon . . . (ii) your consent to, successful completion of, and passing of all applicable background checks." RJN, Ex. A.

For the background checks, Workday and/or HR gave Mr. Juster three different disclosures. These three disclosures shall hereinafter be referred to as the FCRA Disclosure, the ICRAA Disclosure, and the Other Disclosures.[1] *See* RJN, Exs. B-D (three disclosures). In the SAC, Mr. Juster largely focuses on the FCRA Disclosure – specifically, because it includes the following statement:

> The background report(s) may contain information concerning your character, general reputation, personal characteristics, mode of living, or credit standing. **The types of background information that may be obtained include**, but are not limited to: criminal history; litigation history; motor vehicle record and accident history; social security number verification; address and alias history; credit history; verification of your education, employment and **earnings history**; professional licensing, credential and certification checks; drug/alcohol testing results and history; military service; and other information.

RJN, Ex. B (FCRA Disclosure) (emphasis added).[2]

According to Mr. Juster, the reference above to earnings history is improper because California Labor Code § 432.3 provides, *inter alia*, that "[a]n employer shall not, orally or in

---

[1] Workday has submitted a request for judicial notice ("RJN"), asking the Court to consider four documents: the offer letter to Mr. Juster, plus three different disclosures given to Mr. Juster about the background check. Workday asserts that it is appropriate for the Court to consider these documents, even though they are outside the four corners of the complaint, based on the incorporation-by-reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (noting that the "incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself[;] [t]he doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims"). Mr. Juster does not oppose the RJN (but notes that he did not have in his possession at the time he drafted his pleading a copy of the Other Disclosures). Accordingly, the Court has considered the documents.

[2] Like the FCRA Disclosure, the Other Disclosures also make reference to earnings history information.

writing, personally or through an agent, seek salary history information, including compensation and benefits, about an applicant for employment."[3]  Cal. Lab. Code § 432.3 (b).

Mr. Juster contends that the reference to earnings history also renders the FCRA Disclosure improper for purposes of the FCRA and the ICRAA, which require, *inter alia*, that clear and conspicuous disclosures be provided.

Finally, Mr. Juster asserts that Workday violated his rights by (1) improperly terminating him based on his conviction history (which was revealed through the background check),[4] and (2) having him sign a confidentiality agreement that effectively prevents him from speaking to prospective employers about information that is not, in fact, confidential.

Based on, *inter alia*, the above allegations, Mr. Juster asserts the following claims for relief:

(1)    As to Workday only, violation of California Business & Professions Code § 16600 which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. &Prof. Code § 16600.

(2)    As to Workday only, violation of California Labor Code § 432.3 which provides, *inter alia*, that "[a]n employer shall not, orally or in writing, personally or through an agent, seek salary history information, including compensation and benefits, about an applicant for employment."  Cal. Lab. Code § 432.3(b).

(3)    As to Workday only, unlawful use of conviction history in violation of

---

[3] In his papers, Mr. Juster also refers to California Labor Code § 1197.5, which is about equal pay. *See, e.g.*, Cal. Lab. Code § 1197.5(a)-(b) (providing that, with certain exceptions, "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex [or of another race or ethnicity] for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions"). There is a provision in § 432.3 related to § 1197.5.  *See id.* § 432.3(j) ("Consistent with Section 1197.5, nothing in this section shall be construed to allow prior salary to justify any disparity in compensation.").  Although Mr. Juster makes reference to § 1197.5, his case is fundamentally predicated on § 432.3, not § 1197.5.

[4] According to Workday, the background check revealed that Mr. Juster had been convicted of three felonies.  *See* Mot. at 1.

California Government Code § 12952.  *See, e.g.*, Cal. Gov't Code § 12952(d) (providing that "[a]n employer that intends to deny an applicant a position of employment solely or in part because of the applicant's conviction history shall make an individualized assessment of whether the applicant's conviction history has a direct and adverse relationship with the specific duties of the job that justify denying the applicant the position").

(4)   As to both Defendants, failure to make proper disclosures with respect to procurement of a consumer report, in violation of the FCRA.

(5)   As to both Defendants, failure to obtain proper authorization for the procurement of a consumer report, in violation of the FCRA.

(6)   As to both Defendants, failure to make proper disclosures in violation of California's ICRAA.

(7)   As to Workday only, a derivative claim for violation of § 17200.

(8)   As to HR only, a derivative claim for violation of § 17200.

(9)   As to Workday only, breach of contract or, in the alternative, promissory estoppel.

(10)   As to Workday only, breach of the implied covenant of good faith and fair dealing.

(11)   As to Workday only, a violation of the California Private Attorneys General Act ("PAGA").

## II.   DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must

. . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.   FRCA Claims

The Court focuses first on the FCRA claims as these federal claims are the basis for the Court's subject matter jurisdiction.[6] If the federal claims are not viable, then there would be only state law claims remaining, and the Court could in the exercise of its discretion decline supplemental jurisdiction. *See generally* 28 U.S.C. § 1367(c) (addressing circumstances in which a court may decline to exercise supplemental jurisdiction).

1.   Overview of the FCRA

The purpose of the FCRA is

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

---

[5] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[6] There appears to be only federal question, not diversity jurisdiction. *See* SAC ¶¶ 1, 3 (alleging that Mr. Juster is a resident of California and that HR has a principal place of business located in California).

1    15 U.S.C. § 1681(b).

2         Consumer reporting agency is defined as

3              any person which, for monetary fees, dues, or on a cooperative
              nonprofit basis, regularly engages in whole or in part in the practice
4              of assembling or evaluating consumer credit information or other
              information on consumers for the purpose of furnishing consumer
5              reports to third parties, and which uses any means or facility of
              interstate commerce for the purpose of preparing or furnishing
6              consumer reports.

7    *Id.* § 1681a(f).

8         In turn, consumer report is defined as

9              any written, oral, or other communication of any information by a
              consumer reporting agency bearing on a consumer's credit
10              worthiness, credit standing, credit capacity, character, general
              reputation, personal characteristics, or mode of living which is used
11              or expected to be used or collected in whole or in part for the
              purpose of serving as a factor in establishing the consumer's
12              eligibility for –

13              (A) credit or insurance to be used primarily for personal, family, or
                  household purposes;
14
15              (B) employment purposes; or

16              (C) any other purpose authorized under section 604 [15 U.S.C. §
                  1681b].

17    *Id.* § 1681a(d).

18         One specific type of consumer report is also identified in the FCRA – *i.e.*, an investigative

19    consumer report.  *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1090 (9th Cir. 2020) (stating

20    that "investigative reports are a subcategory or specific type of consumer report").  The FCRA

21    defines an investigative consumer report as follows:

22              a consumer report or portion thereof in which information on a
              consumer's character, general reputation, personal characteristics, or
23              mode of living is obtained through personal interviews with
              neighbors, friends, or associates of the consumer reported on or with
24              others with whom he is acquainted or who may have knowledge
              concerning any such items of information.
25

26    *Id.* § 1681a(e).

27         For purposes of the instant action, the main provisions of the FCRA that are relevant are §§

28    1681b(b)(2)(A) and 1681d(a).

Section 1681b covers permissible purposes for consumer reports.  Subsection (b) relates to consumer reports for employment purposes specifically.  Section 1681b(b)(2)(A) provides in relevant part as follows:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
> (i)   a *clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that *consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii)  the consumer has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

Section 1681d relates to investigative consumer reports.  Section 1681d(a) provides in relevant part as follows:

> A person may not procure or cause to be prepared an investigative consumer report on any consumer unless –
>
> (1) it is *clearly and accurately disclosed* to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics and mode of living, whichever are applicable, may be made, and such disclosure . . . (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 609(c) [15 U.S.C. § 1681g(c)] . . . .

*Id.* § 1681d(a) (emphasis added).

    2.   <u>Workday</u>

In the SAC, Mr. Juster contends that the FCRA Disclosure that Workday gave him did not comply with § 1681b(b)(2)(A).  Below is the text of the FCRA Disclosure:

**<u>Disclosure</u>**

> Workday, Inc. (the "Company") may request from a consumer reporting agency and for employment-related purposes, a "consumer report(s)" (commonly known as "background reports") containing background information about you in connection with your employment, or application for employment, or engagement for

7

1    services (including independent contractor or volunteer assignments,
     as applicable).

2    . . . .

3    The background report(s) may contain information concerning your
     character, general reputation, personal characteristics, mode of
4    living, or credit standing. **The types of background information**
     **that may be obtained include,** but are not limited to: criminal
5    history; litigation history; motor vehicle record and accident history;
     social security number verification; address and alias history; credit
6    history; verification of your education, employment and **earnings**
     **history**; professional licensing, credential and certification checks;
7    drug/alcohol testing results and history; military service; and other
     information.

8
                                **Authorization**
9    I hereby authorize Company to obtain the consumer reports
     described above about me.
10

11   RJN, Ex. B (FCRA Disclosure) (emphasis added).

12        As noted above, § 1681(b)(2)(A) has three requirements: (1) there must be a "clear and

13   conspicuous" disclosure that a consumer report may be obtained for employment purposes; (2)

14   this disclosure must be standalone (*i.e.*, the disclosure consists solely of the disclosure); and (3)

15   the consumer must authorize the procurement of the report (and the authorization may be included

16   in the standalone disclosure).  According to Mr. Juster, Workday violated § 1681(b)(2) because

17   the FCRA Disclosure contained false and extraneous information about earnings history: "This

18   disclosure is incorrect on its face and contains extraneous information because [under California

19   Labor Code § 432.3] California employers are not permitted to obtain background reports that

20   include earnings history."  SAC ¶ 138.  For the same reasons, Mr. Juster contends that Workday

21   failed to get proper authorization from him for the procurement of the consumer reports.

22               a.    Clear and Conspicuous Disclosure

23        As an initial matter, Workday suggests that its FCRA Disclosure cannot have violated §

24   1681b(b)(2)(A) because Mr. Juster is complaining about false information but the statute says

25   nothing about a disclosure being "accurate."  Rather, the statute requires a "clear and conspicuous"

26   disclosure only.  This is contrast to the statute related to investigative consumer reports which

27   does use the term "accurately."  *See* 15 U.S.C. § 1681d(a) (providing that an *investigative*

28   *consumer report* cannot be procured unless "it is *clearly and accurately* disclosed to the consumer

8

1    that an investigative consumer report including information as to his character, general reputation,

2    personal characteristics and mode of living, whichever are applicable, may be made") (emphasis

3    added).

4         Although Workday's position is not without any merit, it is problematic.  The Ninth

5    Circuit has explained that "clear means reasonably understandable," *Walker*, 953 F.3d 1082, 1091

6    (9th Cir. 2020) (adding that "[c]onspicuous means readily noticeable") (internal quotation marks

7    omitted), and, arguably, something that is misleading is not reasonably understandable.  Notably,

8    the Ninth Circuit adopted its definition of "clear" by looking to *Rubio v. Capital One Bank*, 613

9    F.3d 1195 (9th Cir. 2010), a case that dealt with the Truth in Lending Act ("TILA"), which also

10   contains a "clear and conspicuous" requirement.  *See Gilberg v. Cal. Check Cashing Stores, Ltd.*

11   *Liab. Co.*, 913 F.3d 1169, 1176 (9th Cir. 2019) ("We adopt our 'clear and conspicuous' analysis

12   from *Rubio* . . . , a TILA disclosure case.").  In *Rubio*, the Ninth Circuit held that a TILA

13   regulation "prohibits a Schumer Box [a table required by federal law] from making 'misleading'

14   APR disclosures, where 'misleading' means a disclosure that a reasonable consumer will either

15   not understand or not readily notice.  Put differently, an APR disclosure that is not 'clear and

16   conspicuous' is *ipso facto* 'misleading.'"  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th

17   Cir. 2010).

18        The problem for Mr. Juster is that, even if the Court takes a broad view of what "clear"

19   means, what is required by the FCRA is a "clear and conspicuous disclosure . . . *that a consumer*

20   *report may be obtained for employment purposes*."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis

21   added); *see also id.* § 1681a(d) (defining consumer report as "any written, oral, or other

22   communication of any information by a consumer reporting agency bearing on a consumer's

23   credit worthiness, credit standing, credit capacity, character, general reputation, personal

24   characteristics, or mode of living").  Thus, the misleading nature of the APR disclosure in *Rubio* is

25   inapposite to the instant case.   Here the purpose of the consumer report was clear.  In addition, the

26   FCRA requires that the prospective employee give authorization for the procurement of that

27   report.  *See id.* § 1681b(b)(2)(A)(ii).  In other words, the point of the FCRA is to ensure that the

28   prospective employee is given full notice of what the employer intends to do so that the

United States District Court
Northern District of California

prospective employee can give knowing consent.  As the Ninth Circuit has noted, Congress's concern was that

> prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights.  The disclosure and authorization provision codified at 15 U.S.C. § 1681b(b)(2)(A) was intended to address this concern by requiring the prospective employer to disclose that it may obtain the applicant's consumer report for employment purposes and providing the means by which the prospective employee might prevent the prospective employer from doing so – withholding of authorization.

*Syed v. M-I, Ltd. Liab. Co.*, 853 F.3d 492, 496 (9th Cir. 2017); *see id.* at 497 (also noting that "the provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report").  The concern underpinning the FCRA disclosure requirement was fulfilled here.

Mr. Juster nonetheless asserts that Workday gave a misleading disclosure because, by asking for consent to obtain, *e.g.*, earnings history information, it suggested it had the right to obtain that information when, in fact, state law barred that inquiry.  *See* SAC ¶ 39 (indicating that the FCRA Disclosure was misleading because it "gave the appearance that the class could be legally required to divulge and/or permit the disclosure of such information on the condition of employment").  But even if the Court were to credit this theory, that is not the kind of misconduct that the FCRA targets.  In other words, that Workday was not legally permitted to obtain the breadth of information that it claimed it could (as alleged) is not the kind of problem with which the FCRA is concerned.  If a disclosure is "overbroad" in nature, that does not prevent a prospective employee from giving knowing consent; the prospective employee is not being misled about what type of information the employer wants to get.  *Compare, e.g.*, *Thomas v. FTS USA, LLC*, No. 3:13-cv-825, 2016 U.S. Dist. LEXIS 86061, at *18 (E.D. Va. June 30, 2016) (stating that "the disclosure misleads consumers as to the sources from which their personal information would be obtained [*i.e.*, governmental agencies as opposed to consumer reporting agencies;] [t]hat misdirection does not satisfy the clarity requirement of § 1681b(b)(2)(A)").  Indeed, if the disclosure is overbroad and excessively intrusive, the point of the FCRA is to afford the applicant

1    to refuse consent.

2          In his papers, Mr. Juster suggests still that he has a FCRA claim based on § 1681b(b)(1),

3    which provides as follows:

4                A consumer reporting agency may furnish a consumer report for
                 employment purposes only if –
5
6          (A) the person who obtains such report from the agency certifies to
                 the agency that –

7                . . .

8                (ii) information from the consumer report will not be used in
                      violation of any applicable Federal or State equal
9                     employment opportunity law or regulation.

10   15 U.S.C. § 1681b(b)(1).  However, this provision is irrelevant for purposes of the pending

11   motion.  The provision does not address interaction between an employer and a prospective

12   employee but rather interaction between an employer and a consumer reporting agency.

13   Specifically, the provision addresses the responsibility that a consumer reporting agency has.

14   Here, that would be HR, but the Court is evaluating at this juncture only the obligations of

15   Workday, the employer.

16                     b.     Standalone Disclosure/Extraneous Information

17          Mr. Juster contends that Workday's FCRA Disclosure also violated the FCRA because it

18   contained extraneous information.  As noted above, the FCRA contains a requirement that a

19   disclosure be standalone (*i.e.*, "consist[] solely of the disclosure").  *Gilberg v. Cal. Check Cashing*

20   *Stores, Ltd. Liab. Co.*, 913 F.3d 1169, 1171 (9th Cir. 2019) ("The ordinary meaning of 'solely' is

21   '[a]lone; singly' or '[e]ntirely; exclusively.'  Because [defendant's] disclosure form does not

22   consist solely of the FCRA disclosure, it does not satisfy FCRA's standalone document

23   requirement.").  Even information that is "'closely related' to FCRA's disclosure requirements . . .

24   may distract or confuse the reader" and therefore is not permitted.  *Id.* at 1176.  That being said,

25   the Ninth Circuit has acknowledged that the FCRA

26                requires a standalone "disclosure . . . that a consumer report may be
                 obtained for employment purposes," but does not further define the
27               term "disclosure" or explain what information can be considered
                 part of that "disclosure" for purposes of the standalone requirement.
28

> We now hold that beyond a plain statement disclosing "that a consumer report may be obtained for employment purposes," *some concise explanation of what that phrase means may be included* as part of the "disclosure" required by § 1681b(2)(A)(i). For example, a company could briefly describe what a "consumer report" entails, how it will be "obtained," and for which type of "employment purposes" it may be used. Such information would further the purpose of the disclosure by helping the consumer understand the disclosure.

*Walker*, 953 F.3d at 1088-89 (emphasis added).

In its papers, Workday argues that the reference to earnings history (as being a type of background information that may be obtained) cannot qualify as extraneous. Something is extraneous when something *other than* the disclosure is provided as part of the FCRA-required disclosure; but here what Workday did was provide a brief explanation of what a consumer report is and what can be obtained. *See* Reply at 3 (arguing that "cases [cited by Mr. Juster] faulted the inclusion of substantive terms in addition to the disclosure; they did not fault the inclusion of a brief description of what the consumer report may entail"). The Court agrees with Workday's position. The Court therefore rejects Mr. Juster's argument that there was extraneous information in the FCRA Disclosure.

> 3.   HR

> a.   Section 1681b(b)(2)

As for HR, Mr. Juster contends that it too failed to provide proper disclosures for procurement of a consumer report, and failed to obtain proper authorization for such, in violation of § 15 U.S.C. § 1681b(b)(2)(A). As noted above, §1681b(b)(2)(A) provides in relevant part as follows:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –

> (i)   a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii)   the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

In its motion to dismiss, HR points out that § 1681b(b)(2)(A) applies to a person who "procure[s] a consumer report" or "cause[s] a consumer report to be procured." *Id.* That would be the employer, and not the consumer reporting agency. HR adds that § 1681b(b)(2)(A) should not be broadly construed to cover a consumer reporting agency because there are other provisions in the FCRA that impose obligations on consumer reporting agencies. *Cf. Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) ("The statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs [consumer reporting agencies], furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where no limitation has been written by the legislature.").

HR's position has merit. *Nelson* weighs in its favor. Also, several district courts have expressly held that § 1681b(b)(2)(A) does not apply to a consumer reporting agency.

For example, in *Marchioli v. Pre-Employ.com, Inc.*, No. EDCV 16-2305-JGB(DTBx), 2017 U.S. Dist. LEXIS 81755 (C.D. Cal. Jan. 25, 2017), the district court noted first that "[t]he [FCRA's] definition of a 'consumer reporting agency,' as 'any person which . . . assembl[es] or evaluat[es] consumer . . . information . . . for the purpose of *furnishing* consumer reports to third parties,' frames the role of a CRA as a provider of information for the use of others." *Id.* at *20-21 (quoting 15 U.S.C. § 1681a(f)). The court then noted that § 1681b(b), which covers conditions for furnishing and using consumer reports for employment purposes, has "'three subsections that set forth certain obligations for consumer reporting agencies and [certain obligations for] users such as employers. . . . [E]ach of the subsections need not, and does not, prescribe obligations for *both* agencies and users.'" *Id.* at *21 (emphasis added). Rather, § 1681b(b)(2) and (3) applies to users only. *See id.* at *22 (noting that "[t]he most logical reading of the statute precludes liability for CRAs under subsection (2) and (3)[;] [s]ince there is nothing in the Complaint to suggest that PE acted as a 'user' of credit information and section 1681b(b)(2) and (3) only apply to 'users,' Plaintiff's claim against PE under those subsections fails as a matter of law"). In contrast, § 1681b(b)(1) applies to consumer reporting agencies. *See also Obabueki v. IBM*, 145 F. Supp. 2d

371, 393 (S.D.N.Y. 2001) (concluding that §§ 1681b(b)(2) and (3) "both affect users" whereas § 1681b(b)(1) "sets forth obligations that an agency must satisfy before furnishing a consumer report").

Courts that agree with *Marchioli* include:

- *Lagrassa v. Jack Gaughen, LLC*, No. 1:09-0770, 2011 U.S. Dist. LEXIS 38838, at *28 (M.D. Pa. Mar. 11, 2011) (report and recommendation) (stating that "the plaintiff claims that Acxiom, a consumer reporting agency, violated §1681b(b)(2)(A)," but "it is clear that §1681b(b)(2)(A) applies to employers, and not to consumer reporting agencies"), *adopted by* 2011 U.S. Dist. LEXIS 34323, at *6 (M.D. Pa. Mar. 30, 2011) (concluding that magistrate judge "correctly found that Plaintiff cannot argue a violation of § 1681b(b)(2) because that provision applies only to *users* of a report, rather than agencies that furnish the report") (emphasis in original).
- *Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15, 21 (D.D.C. 2014) (stating that § 1681b(b)(2) "has been interpreted as applying exclusively to users").

The authority above is persuasive.  Mr. Juster points out that not all courts have agreed with, *e.g.*, *Marchioli* and *Obabueki*.  This is true.  But notably, he cites decisions where courts have held that § 1681b(b)*(3)* is not limited to users of consumer reports but rather applies to both users and furnishers of consumer reports.  *See, e.g.*, *Goode v. Lexis Nexis Risk & Info Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (stating that "[n]othing in the text of § 1681b(b)(3)(A) excludes defendant, as a CRA, from its scope").  *Goode* does not lend any support to Mr. Juster given that, in the SAC, he has asserted a violation of § 1681b(b)*(2)* only.

           b.        <u>Section 1681b(b)(3)</u>

In his papers, Mr. Juster suggests that he could amend his pleading to add in a claim for a violation of § 1681b(b)(3).  Mr. Juster's contention that he has a viable claim against HR under § 1681(b)(3) is doubtful.

Section 1681b(b)(3)(A) provides in relevant part as follows:

in *using* a consumer report for employment purposes, before *taking*

14

> *any adverse action* based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)  a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

15 U.S.C. § 1681b(b)(3) (emphasis added).  Given the language italicized above, § 1681b(b)(3) on its face appears to be applicable to a user of a consumer report (*i.e.*, a prospective employer), and not a consumer reporting agency such as HR.  *See also Muir v. Early Warning Servs., LLC*, Civil Action No. 16-521 (SRC), 2016 U.S. Dist. LEXIS 126072, at *9-10 (D.N.J. Sep. 15, 2016) (discussing the language and structure of § 1681b(b); also noting that "[a] Federal Trade Commission Staff Report and advisory opinions further support the conclusion that subsections (b)(2) and (b)(3) do not apply to CRAs").

As noted above, the main case that held that a consumer reporting agency can be liable for a violation of § 1681b(b)(3)(A) (*i.e.*, not just an employer) is *Goode*.  In *Goode*, the defendant "operate[d] a proprietary system called 'Esteem' that 'helps organizations identify applicants with [a] history of theft or fraud.'"  *Id.* at 534.

> When a member requests information about a current or potential employee, defendant searches its system for possible matches between the employee's personal information and a record on file.  If a match is found, defendant "verifies" the match . . . .  Once a match is verified, defendant classifies the employee in accordance with adjudication scores agreed upon by defendant and the member ("adjudication").  If the employee falls below a certain threshold, defendant assigns the employee a "noncompetitive" score.  Defendant then generates a "report" detailing the match and the adjudication and sends the report to the inquiring member.
>
> . . . . As an additional service, defendant sends . . . "pre-adverse action letters" on members' letterhead to employees or potential employees whose information results in a match.  Defendant sends the pre-adverse action letter to employees or potential employees after it completes the adjudication and sends the report to the member. . . . Several days after it sends the pre-adverse action letter, defendant sends the employee a final "adverse action letter" on the member's letterhead.

*Id.* at 535.

The plaintiffs in *Goode* argued that the defendant violated § 1681b(b)(3)(A) because the

United States District Court
Northern District of California

statute provides that, "before taking any 'adverse action' against an employee, the person taking such action must send the employee a copy of the report and a notice of the consumer's rights under the FCRA." *Id.*  The purpose of the statute is "to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken." *Id.* at 537 (internal quotation marks omitted).  The plaintiffs in *Goode* argued that the "defendant took an adverse action against them when it verified an Esteem match and adjudicated them as noncompetitive," as this "occurred before defendant sent them the pre-adverse action letters." *Id.* at 538.

The defendant argued that it could not be held liable for a violation of § 1681b(b)(3)(A) because it was only a consumer reporting agency, and not an employer.  The *Goode* court rejected the argument.  First, it noted that

> [n]othing in the text of § 1681b(b)(3)(A) excludes defendant, as a CRA, from its scope.  The requirements of 15 U.S.C. § 1681b(b)(3)(A) apply to any "person intending to take such adverse action."  Under the FCRA, "'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b).  Thus, defendant is a person and must comply with § 1681b(b)(3)(A).

*Goode*, 848 F. Supp. 2d at 542.

Second, the *Goode* court rejected the defendant's contention that, as an agent of the employer, it could not be held liable for a violation of the statute.

> In support of this, defendant cites *Weidman v. Federal Home Loan Mortgage Corp.*, 338 F. Supp. 2d 571 (E.D. Pa. 2004) . In that case, the plaintiffs sued Freddie Mac under § 1681m, a provision of the FCRA that, like § 1681b(b)(3)(A), requires anyone taking an adverse action to notify the consumer against whom the action is taken.  The Weidman plaintiffs argued that Freddie Mac had taken an adverse action against them by assigning a "caution" label to their loan application.  The court held that Freddie Mac could not be liable under the FCRA because it was statutorily barred from extending credit and therefore barred from making any actual decision about the consumer's loan application.
>
> *Weidman* is distinguishable from the present case.  The *Weidman* court relied on the fact that the "caution" label was "intended to be filtered by an autonomous decision-maker with the authority to offer credit."  *In this case, plaintiffs have alleged a complete lack of "filtering" by the employers.  Defendant adjudicates employees based on a rubric set out by the member employer and classifies the employees as competitive or noncompetitive.  Nothing in the*

> *Complaint suggests that the member employer is involved in analyzing the initial adjudication  or any subsequent challenge to the adjudication by an employee.*  Further, unlike *Weidman*, there is no statutory bar preventing defendant in this case from making employment decisions with respect to plaintiffs.

*Id.* at 542-43 (emphasis added).  In short, the defendant took adverse action against the prospective employee directly, and did not simply provide information for the employer who then took adverse action.

In *Mix v. Asurion Insurances Services*, No. CV-14-02357-PHX-GMS, 2016 U.S. Dist. LEXIS 172874 (D. Ariz. Dec. 14, 2016), the district court followed the *Goode* court's lead.  It noted that

> the degree of review and particular method of use undertaken by [the employer] and every other . . . client [of the consumer reporting agency] "is relevant to whether [the consumer reporting agency] has 1681b(b)(3) duties."  *Goode*, for example, highlighted that the employer in that case "did not conduct any review of the adjudication" by the CRA before making an employment decision, such that the CRA's "adjudication of plaintiffs [was], quite literally," an adverse action.  "[A]dverse action occurs when the decision is carried out, when it is communicated or actually takes effect."  *Goode* explained that the CRA's "adjudication of plaintiffs . . . actually [took] effect before [the CRA] sent out the pre-adverse action letters because *there was no real opportunity for plaintiffs to contest the adjudication or change its outcome thereafter.  This scheme is missing the crucial last step . . . where the employer makes a final decision based on both the report and any information the employee uses to contest the report.*"  An employer's degree of review or particular use of the adjudicated report are thus relevant to determine when a decision is carried out, communicated, or takes effect such that the decision constitutes an adverse action.

*Id.* at *29-30 (emphasis omitted and added).

In the instant case, Mr. Juster claims that, even though HR is a consumer reporting agency and not a prospective employer, he can now allege facts to support a violation of § 1681b(b)(3)(A) as contemplated by *Goode* and *Mix*.  He notes that the background report that HR prepared states, on its face, that one of the services that HR provided for Workday was "Managed Adjudication 3.0."  *See* Fouts Decl., Ex. 1 (Background Rpt. at 1).[7]  He then asserts that he found online a copy

---

[7] The Court takes note that the parties have submitted different versions of the background report. HR's version can be found at Exhibit 1 to the Fouts Declaration.  Mr. Juster's version can be found at Exhibit A to the Nakama Declaration.  It appears that HR's version is a later-dated version.

United States District Court
Northern District of California

1    of HR's Service Agreement.  *See* Nakama Decl, Ex. D (HR Service Agreement).  That agreement

2    contains the following provision:

3            If Subscriber elects to obtain [HR's Managed Adjudication]
             services, Subscriber shall provide HireRight with the criteria,
4            guidelines and instructions established by Subscriber for
             determining whether the information in an Applicant`s Screening
5            Report satisfies Subscriber's eligibility criteria ("Adjudication
             Guidelines").  HireRight will apply Subscriber`s Adjudication
6            Guidelines to the Screening Report information reported by
             HireRight and then provide to Subscriber a status that reflects the
7            outcome of such application ("Managed Adjudication Services");
             provided, *however, that HireRight will not apply any "does not*
8            *meet" or equivalent final adverse status, which ultimately must be*
             *determined and applied by Subscriber. . . .*

9

10   Nakama Decl., Ex. D (HR Service Agmt. ¶ 2(f)) (emphasis added).  This provision is consistent

11   with information on HR's website which describes Managed Adjudication as follows:

12           The completed background screening reports are manually reviewed
             by a HireRight adjudicator using the employer's designated hiring
13           guidelines. Reports that satisfy the employer's guidelines are
             identified as "meets company standards''; all others are identified as
14           "pending" for the employer to review and determine adjudication
             status. *HireRight will not adjudicate any final adverse adjudication*
15           *status for employers. Employers are solely responsible for making*
             *the final adverse employment decision regarding a candidate's*
16           *suitability for hire.*

17   Nakama Decl., Ex. C (HireRight Adjudication 3.0 Services) (emphasis added).  Finally, Mr. Juster

18   points out that the second page of the background report that HR has submitted for the Court's

19   review appears to provide an "Adjudication Results Summary."  One of the line items ("Court

20   Records") has a red flag and states "Does Not Meet Company Standards."  *See* Fouts Decl., Ex. 1

21   (Background Rpt. at 2).[8]  According to Mr. Juster, HR violated § 1681b(b)(3)(A) because it

22   engaged in this adverse action without providing him first with a letter that would have enabled

23   him to address the issue.  *See* Opp'n at 10.

24           The problem for Mr. Juster is that, based on the above, he does not have a viable claim for

25   a violation of § 1681b(b)(3)(A) under the *Goode/Mix* rubric.  The information about HR's

26

27   ───────────────────
     [8] As noted above, Mr. Juster appears to have an earlier version of the background report.  This
28   version shows a yellow flag for "Court Records" with the comment "Pending – Potential
     Conflict."  *See* Nakama Decl., Ex. A (Background Rpt. at 2).

                                                    18

1    Managed Adjudication services states that HR does *not* make a final adverse adjudication but

2    rather *reserves that decision for the employer*.  Moreover, nothing about the above indicates

3    whether HR sent a pre-adverse action letter to Mr. Juster and when.  *Goode* and *Mix* are therefore

4    distinguishable.

5         Accordingly, based on the papers submitted, the Court is not persuaded that Mr. Juster

6    could plead a § 1681b(b)(3)(A) violation.

7                    c.    Sections 1681b(b)(1), 1681e(a), and 1681d(d)(2)

8         In addition to § 1681b(b)(3)(A), Mr. Juster seems to suggest that he could assert claims

9    based on other FCRA provisions.  (In his papers, Mr. Juster suggests that he simply wants to

10   *clarify* that his pleading asserts these claims.  However, that is not a fair characterization; at best,

11   two of the three FCRA provisions were mentioned in passing in the SAC.)  There are three FCRA

12   provisions at issue:

13        • Section 1681b(b)(1).

14        • Section 1681e(a).

15        • Section 1681d(d)(2).

16   Each section is addressed briefly below.

17                    i.    Section 1681b(b)(1)

18   Section 1681b(b)(1) provides as follows:

19            A consumer reporting agency may furnish a consumer report for
             employment purposes only if –
20
21        (A) the person who obtains such report from the agency certifies to
             the agency that –

22            (i)  the person has complied with paragraph (2) with respect to
                  the consumer report [addressing disclosures], and the person
23                will comply with paragraph (3) with respect to the consumer
                  report if paragraph (3) becomes applicable [addressing
24                adverse actions]; and

25            (ii) information from the consumer report will not be used in
                  violation of any applicable Federal or State equal
26                employment opportunity law or regulation; and

27        (B) the consumer reporting agency provides with the report, or has
             previously provided, a summary of the consumer's rights under
28           this subchapter, as prescribed by the Bureau under section

United States District Court
Northern District of California

1681g(c)(3) [1] of this title.

15 U.S.C. § 1681b(b)(1).  Mr. Juster briefly mentions § 1681b(b)(1)(A) in ¶¶ 9 and 16 of the SAC.

To the extent Mr. Juster suggests he has a claim for a violation of § 1681b(b)(1)(A), the allegations in his complaint do not support such.  For example, in ¶ 11, he expressly alleges that "HIRERIGHT receives the above-described certification from WORKDAY and other employer-customers."  SAC ¶ 11.  In ¶ 12, he also alleges that there was a "written certification entered into between the parties."  SAC ¶ 12.  There is nothing else to suggest that HR did not satisfy its obligation to get a certification from Workday.  Mr. Juster alleges: "HIRERIGHT actively assisted WORKDAY and other employers in violating California equal opportunity employment law and regulations, on behalf of the employers, by requesting individuals to sign authorizations that permit disclosure of salary and earnings history in order to gain or obtain or maintain employment," SAC ¶ 12.  Although Mr. Juster might argue that this may state a violation of state law by providing such assistance, it does not state a violation of the FCRA.

ii.     Section 1681e(a)

Section 1681e(a) provides as follows:

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title *and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title*.  These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.  *No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.*

15 U.S.C. § 1681e(a) (emphasis added).  Mr. Juster refers briefly to § 1681e(a) in his SAC.  *See* SAC ¶¶ 10, 18.

Based on the allegations in the SAC, it does not appear that Mr. Juster has a claim against HR.  Section 1681b defines the permissible purposes of consumer reports, and one of the permissible purposes is a use of the information for employment purposes.  *See* 15 U.S.C. § 1681b(a)(3) (providing that a consumer reporting agency may furnish a consumer report "[t]o a

20

1   person which it has reason to believe – (B) intends to use the information for employment

2   purposes"). There should be no real dispute that Workday did seek information about Mr. Juster

3   for employment purposes.

iii.   Section 1681d(d)(2)

5   Section 1681d addresses investigative consumer reports. Subsection (d)(2) provides as

6   follows:

> A consumer reporting agency shall not make an inquiry for the
> purpose of preparing an investigative consumer report on a
> consumer for employment purposes if the making of the inquiry by
> an employer or prospective employer of the consumer would violate
> any applicable Federal or State equal employment opportunity law
> or regulation.

11   15 U.S.C. § 1681d(d)(2). The SAC contains no reference to § 1681d(d)(2). At most, it points to a

12   similar provision in the ICRAA – *i.e.*, California Civil Code § 1786.20(c). *See* SAC ¶ 186; Cal.

13   Civ. Code § 1786.20(c) ("An investigative consumer reporting agency may not make an inquiry

14   for the purpose of preparing an investigative consumer report on a consumer for employment

15   purposes if the making of the inquiry by an employer or prospective employer of the consumer

16   would violate applicable federal or state equal employment opportunity law or regulation.").

17   Mr. Juster argues still that he could amend to add in a § 1681d(d)(2) claim against HR

18   because (1) the statute clearly applies to a consumer reporting agency and (2) the statute prohibits

19   a consumer reporting agency from making an inquiry that would violate state law (such as

20   California Labor Code § 432.3 which prevents inquiry into earnings history information). But §

21   1681d(d)(2) is predicated on there being an "inquiry for the purpose of preparing an investigative

22   consumer report," 15 U.S.C. § 1681d(d)(2), and, as noted above, "investigative consumer report"

23   has a specific definition under the FCRA:

> a consumer report or portion thereof in which information on a
> consumer's character, general reputation, personal characteristics, or
> mode of living is obtained through personal interviews with
> neighbors, friends, or associates of the consumer reported on or with
> others with whom he is acquainted or who may have knowledge
> concerning any such items of information.

28   15 U.S.C. § 1681a(e). Although Mr. Juster has in the SAC suggested that such an inquiry was

United States District Court
Northern District of California

made, *see* SAC ¶ 147 (alleging that "[HR] conducted personal interviews of Plaintiff and 'with neighbors, friends, or associates of the consumer reported or on with others with whom he is acquainted to obtain information' of Plaintiff and Class Members"), the allegation is conclusory in nature.  Mr. Juster has simply parroted the language of § 1681a(e) and made no allegations as to who was personally interviewed.

Accordingly, based on the papers submitted, Mr. Juster does not have a viable § 168d(d)(2) claim.

### 4.    Summary

For the foregoing reasons, the Court dismisses the FCRA claims as pled against Workday and HR.  Furthermore, the Court is doubtful as to whether Mr. Juster could amend his pleading to assert a viable FCRA claim – particularly against Workday but even as to HR, with one possible exception, *i.e.*, a claim against HR under § 1681d(d)(2) (*e.g.*, if an investigative consumer report was provided).  However, because futility is a high standard, the Court shall allow Mr. Juster to amend his complaint to replead his FCRA claims against Workday and HR.  In amending, Mr. Juster must identify which FCRA provisions he claims have been violated.  He must also make nonconclusory allegations in support of the FCRA claims, and the Court reminds Mr. Juster that he (and his counsel) have Rule 11 obligations to make factual allegations in good faith.  In addition, Mr. Juster should include in his allegations *who* Workday and/or HR allegedly asked for earnings history information – whether Mr. Juster himself, a prior employer, or both.

## C.    State Law Claims

Because it is not clear at this time whether Mr. Juster has viable FCRA claims, the Court defers ruling on Mr. Juster's state law claims, both as to Workday and HR.

## III.    CONCLUSION

For the foregoing reasons, the Court grants Workday and HR's motions to dismiss the FCRA claims.  The Court defers ruling on the motions to dismiss the state law claims.  The Court gives Mr. Juster leave to file an amended complaint so as to replead his FCRA claims, if he can do so in good faith.  The only amendment that the Court is permitting at this time is with respect to the FCRA claims.

22

1    The amended complaint shall be filed within four weeks of the date of this order.  If Mr.

2  Juster chooses not to file an amended complaint, then he shall file (by the same date) a notice

3  confirming that he is not filing an amended pleading.  If no amended complaint is filed, then the

4  Court shall consider whether to retain supplemental jurisdiction over the remaining state law

5  claims.  If an amended complaint is filed, then Workday and HR shall have until three weeks after

6  filing of amended complaint to respond to that pleading, whether by answer or motion.  If a

7  motion is filed, only the FCRA claims should be substantively addressed; Workday and HR,

8  however, may incorporate by reference the challenges made to the state law claims made in their

9  initial 12(b)(6) motions.

   This order disposes of Docket Nos. 26 and 29.


**IT IS SO ORDERED**.


Dated: August 1, 2022


_____
EDWARD M. CHEN
United States District Judge